1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

LEAH S. RAPPE,

           Plaintiff,

           v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

           Defendant.

No. 1:14-CV-03195-JTR

ORDER GRANTING IN PART
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

     **BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF Nos. 14, 19. Attorney D. James Tree represents Leah Rappe (Plaintiff); Special Assistant United States Attorney Ryan Lu represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

     Plaintiff filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on October 18, 2011, alleging disability since

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 1

September 13, 2011.  Tr. 158-66.  The applications were denied initially and upon reconsideration.  Tr. 107-10, 113-16.  Administrative Law Judge (ALJ) John W. Rolph held a video hearing on April 30, 2013, at which Plaintiff, represented by counsel, testified as did vocational expert (VE) Fred Cutler.  Tr. 35-68.  The ALJ issued an unfavorable decision on May 17, 2013.  Tr. 17-32.  The Appeals Council denied review.  Tr. 1-6.  The ALJ's May 2013 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on December 22, 2014.  ECF Nos. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was 31 years old at the time of the hearing.  Tr. 70.  Plaintiff graduated from high school.  Tr. 40.  The last time Plaintiff worked full time was in 2011 as a dietary cook at a nursing home.  Tr. 40-42.  On account of neck and lower back pain, Plaintiff cut back to working part time, but eventually had to stop working altogether.  Tr. 41-42.  Plaintiff attempted to do part time work at H&R Block in January 2013, but had to stop working because of back pain.  Tr. 42-43.  Plaintiff testified that she would miss work one to two days a week.  Tr. 43.

Plaintiff testified that her back pain prevents her from being able to do full time work.  Tr. 47.  On a scale of one to ten, Plaintiff rates her daily pain as a seven or eight.  Tr. 50.  Once every couple of months, her back pain intensifies and extends down her legs and into her feet.  Tr. 44-45.  Plaintiff testified that she experiences numbness in her hands, with the right hand worse than the left.  Tr. 45.  Pain and numbness in her hands affects Plaintiff's ability to drive, talk on the phone, and cook.  Tr. 46.  Plaintiff testified that she used to take hydrocodone and cyclobenzaprine, but stopped taking these medications when she became pregnant.

Tr. 47.

Plaintiff testified that she has to lay down and take naps a couple times each day.  Tr. 50.  Plaintiff sometimes wears a back brace to do housework or other activities.  Tr. 50.  Plaintiff testified that she helps her mother and sister with some household chores.  Tr. 51.  Plaintiff testified that she cannot lift more than ten pounds.  Tr. 51.  Plaintiff testified that she cannot stand for longer than half an hour or walk for more than ten minutes.  Tr. 52.  On bad days, Plaintiff has to lie down for most of the day.  Tr. 54.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097.  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 3

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon claimants to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once claimants establish that physical or mental impairments prevent them from engaging in their previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If claimants cannot do their past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimants can make an adjustment to other work, and (2) specific jobs exist in the national economy which claimants can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If claimants cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(i-v), 416.920(a)(4)(i-v).

## ADMINISTRATIVE DECISION

On May 17, 2013, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Preliminarily, for purposes of Plaintiff's DIB application, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2014. Tr. 22.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 13, 2011, the alleged onset date. Tr. 22.

At step two, the ALJ determined Plaintiff had the following severe impairment: lumbar, cervical and thoracic spine problems with neck pain/cervicalgia. Tr. 22.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 23.

At step four, the ALJ assessed Plaintiff's residual function capacity (RFC) and determined she could perform light work with the following limitations:

> She is able to lift up to 20 pounds occasionally, lift and carry up to 10 pounds frequently in light work as defined by the regulations. She must be allowed to sit or stand alternately at 30-minute intervals for 2 to 5 minutes, during which time she can remain on task. She may frequently climb ramps and stairs, balance, kneel, and crouch; she may occasionally stoop and crawl. She may never climb ladders, ropes or scaffolds. She may occasionally reach overhead with the bilateral upper extremities. She must avoid more than occasional exposure to extreme cold, vibration, and hazards such as moving machinery and unsecured heights.

Tr. 23. The ALJ concluded that Plaintiff was not able to perform her past relevant work. Tr. 26.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of cashier II, agricultural sorter, and final assembler. Tr. 26-27. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from September 13, 2011, through the date of the ALJ's decision. Tr. 27.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) finding Plaintiff's symptom reporting testimony less than fully credible, and (2) rejecting the opinion of Plaintiff's treating physician, Troy Witherrite, M.D.

## DISCUSSION

**A.    Credibility**

Plaintiff contests the ALJ's adverse credibility determination. ECF No. 14

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 5

1  at 7-15.

2      It is generally the province of the ALJ to make credibility determinations,

3  *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific

4  cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent

5  affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's

6  testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d

7  1273, 1281 (9th Cir. 1996).  "General findings are insufficient:  rather the ALJ

8  must identify what testimony is not credible and what evidence undermines the

9  claimant's complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

10     The ALJ found Plaintiff not fully credible concerning the intensity,

11  persistence, and limiting effects of her symptoms.  Tr. 24.  The ALJ reasoned that

12  Plaintiff was less than credible because her symptom reporting was contrary to (1)

13  the objective medical evidence and Plaintiff's treatment record, (2) the fact that

14  Plaintiff's condition improved with treatment, (3) the fact that Plaintiff did not seek

15  treatment after March 2012, (4) the fact that Plaintiff worked during the period of

16  her alleged disability, (5) Plaintiff's activities of daily living, (6) Plaintiff's

17  sporadic work history, and (7) the fact that Plaintiff inconsistently reported her

18  marijuana use.

19  **1.  Contrary to objective evidence and treatment record**

20     The ALJ noted that Plaintiff's allegations of neck and back pain were

21  inconsistent with the treatment record.  Tr. 24.  The ALJ cited to September 2011

22  treatment records in which Plaintiff complained of back and neck pain, but

23  exhibited normal strength, normal sensation and normal deep tendon reflexes of

24  the upper and lower extremities and negative straight leg raise.  Tr. 24 (citing Tr.

25  338-40).  The ALJ cited to MRIs showing moderate C5-6 disc protrusion causing

26  moderate central canal narrowing and mild central disc protrusion.  Tr. 24 (citing

27  360-61).  The ALJ found medical evidence did not support that Plaintiff needed to

28  lie down during the day.  Tr. 25 (citing Tr. 380).  Likewise, the ALJ found

evidence did not support Plaintiff's complaints of hand numbness.  Tr. 25 (citing Tr. 336-62, 368).

Although it cannot serve as the sole ground for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ did not err in finding that medical evidence failed to support Plaintiff's testimony that she needs to lie down during the day.  Dr. Witherrite explicitly stated that Plaintiff did *not* need to lie down during the day.  Tr. 380. Plaintiff argues that Dr. Witherrite's opinion was rendered prior to Plaintiff's pregnancy, which prevented her from taking pain medication.  ECF No. 14 at 9. But as discussed *infra*, just because Plaintiff was unable to take prescription pain medication does not mean that alternative treatment was not available to Plaintiff. Other than her own testimony, no evidence supports her need to lie down during the day.

The Court agrees with Plaintiff that her MRIs, and the aggressive treatment she received upon her doctors' review of the MRI results, seem to support her allegations of back and neck pain.  ECF No. 14 at 8-9.  The Court further agrees with Plaintiff that the ALJ's citation to treatment notes may have been overly selective.  *See* ECF No. 20 at 4 (citing Tr. 376).  On remand, the ALJ shall reevaluate the medical evidence, including the treatment notes supporting more severe limitations as alleged by Plaintiff.  *See*, *e.g.*, Tr. 376.

The ALJ found Plaintiff's complaints of hand numbness unsupported by the evidence.  Tr. 25.  The ALJ noted, "There are references to past diagnosis of carpal tunnel syndrome in the treatment record but no evidence of current findings of symptoms."  Tr. 25.  Plaintiff argues that the record establishes that Plaintiff's hand numbness is likely a symptom of her "disk protrusion touching the cervical cord and cervicalgia"—not carpal tunnel syndrome.  ECF No. 14 at 13-14 (citing

Tr. 229, 336, 380).  Plaintiff makes a valid point, but she fails to refute the ALJ's reasoning that the record does not contain evidence (other than her own testimony) that her hand numbness functionally limits her in any way.  The mere diagnosis of impairment, without the assessment of associated limitations, is not enough to sustain a finding of disability.  *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).  Thus, the ALJ's reasoning is sound, regardless of whether Plaintiff's hand numbness is caused by carpal tunnel syndrome or by "disk protrusion touching the cervical cord and cervicalgia."  ECF No. 14 at 14.  Nevertheless, as the Court finds remand is necessary for other reasons discussed *supra* and *infra*, on remand, the ALJ should reevaluate the evidence underlying Plaintiff's hand numbness and supplement the record, if necessary.

### 2.  Improvement with treatment

The ALJ noted that Plaintiff received a steroid injection at L5, after which she reported a complete resolution of her pain.  Tr. 25 (citing Tr. 372).  The ALJ noted that Plaintiff reported in February 2012 improved function and decreased cervical pain.  Tr. 25 (citing Tr. 370-71).  The ALJ noted that Plaintiff's doctor told Plaintiff to let the pain clinic know if Plaintiff wanted another injection.  Tr. 25 (citing Tr. 368-69).  As Plaintiff did not request a repeat injection, the ALJ inferred that Plaintiff had a "lack of interest in pursuing further injection."  Tr. 25.

Generally, the fact that a condition can be remedied by medication is a legitimate reason for discrediting an opinion.  *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ did not err in finding that Plaintiff's back pain was greatly improved with treatment, especially steroid injections.  In January 2012, after a steroid injection a month earlier, Plaintiff reported "she literally had no pain."  Tr. 372; *see also* Tr. 373 (treatment provider noting "dramatic resolution of pain" and that Plaintiff "certainly would be a candidate for repeat of [steroid injection] should her lumbar symptoms recur").  In visits to the pain clinic after her steroid

injection, Plaintiff's treatment providers prescribed her Vicodin, which appeared to help her pain as she reported pain ratings of "3/10" in February 2012, Tr. 370, and "1/10" in March 2012, Tr. 368.   The fact that medication and steroid injections can largely alleviate Plaintiff's neck and back pain is a specific, clear, and convincing reason to discredit Plaintiff.

### 3.  Lack of treatment

The ALJ noted that Plaintiff did not seek treatment for her back and neck pain after March 2012, except for pregnancy-related visits.  Tr. 25 (citing Tr. 383-96).

Unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints.  20 C.F.R. §§ 404.1530, 416.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (finding the ALJ's decision to reject the claimant's subjective pain testimony was supported by the fact that claimant was not taking pain medication).

It is unclear whether the ALJ erred in using Plaintiff's failure to seek medical treatment as a reason to discredit Plaintiff.  Plaintiff argues that the fact that she was pregnant, and unable to take pain medication explains her failure to pursue further treatment for her back and neck.  ECF No. 14 at 9-11.  Generally, the fact that a claimant becomes pregnant is not a clear and convincing reason to discredit the claimant's pain testimony.  *See Kelly v. Astrue*, 2012 WL 3638029, at *11 (E.D. Cal. Aug. 21, 2012) ("The Court finds no rational basis to discredit Plaintiff's pain testimony based upon the exercise of her fundamental right to bear a child.").  The Court agrees that Plaintiff's pregnancy excused her from continuing her regime of pain medication.  *See* Tr. 387 (nurse advising Plaintiff to stop taking Vicodin at an October 2012 office visit).  But nothing in the record (other than Plaintiff's own testimony, Tr. 49) suggests that Plaintiff's pregnancy would prevent her from seeking other treatment such as physical therapy, over-the-

counter medication, and steroid injections.  Whether such treatment was available, or potentially beneficial, to Plaintiff is outside the Court's expertise.  On remand, the ALJ should not use Plaintiff's lack of treatment to discredit her.  Alternatively, the ALJ should supplement the record to determine whether Plaintiff could have pursued alternate treatments.

### 4.  Working during period of alleged disability

The ALJ noted that Plaintiff worked part time on two occasions and attempted certified nursing assistant (CNA) training.  Tr. 25.  The ALJ found Plaintiff unable to perform medium level work as a cook, but stated that there was "no evidence she was incapable of sustaining lighter type tasks."  Tr. 25.  The ALJ found Plaintiff's "interest in CNA training suggests she felt capable of some types of work activity, although this particular job was likely beyond her capacities."  Tr. 25.

Generally, a claimant's ability to work can be considered in assessing credibility.  *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).  But the fact that claimants "tried to work for a short period of time and, because of [their] impairments, *failed*," should not be used to discredit claimants. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007).  In fact, evidence that claimants tried to work and failed may support the claimants' allegations of disabling pain.  *Id.* at 1038; *see also Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (reversing the ALJ's adverse credibility determination reasoning, in part, that the fact that "[the claimant] sought employment suggests no more than that he was doing his utmost, in spite of his health, to support himself").

The ALJ erred in using Plaintiff's work attempts to discredit her.  Plaintiff worked as a dietary cook at a nursing home; at first, she worked full time, but on account of neck and lower back pain, Plaintiff cut back to working part time, and eventually had to stop working altogether.  Tr. 40-42.  Plaintiff attempted to do part time work at H&R Block in January 2013, but had to stop working because of

back pain.  Tr. 42-43.  Likewise, Plaintiff completed some CNA training, but could not complete the program on account of her impairments.  Tr. 48; *see also* Tr. 343 (indicating that Plaintiff was unable to "lift/move" people as required by the CNA program).  The ALJ found that none of Plaintiff's work during her period of alleged disability rose to the level of substantial gainful activity.  Tr. 22.  Nothing in the record indicates that Plaintiff stopped working for reasons other than her impairments.  In addition, as argued by Plaintiff, the fact that Plaintiff did not qualify for unemployment benefits further buttresses Plaintiff's claim.  ECF No. 14 at 12 (citing Tr. 41).  The fact that Plaintiff tried to work, but had to stop because of her impairments, is not a specific, clear, and convincing reason to discredit her.  *Lingenfelter*, 504 F.3d at 1038-39; *Webb*, 433 F.3d at 688.

### 5.  Daily activities

The ALJ noted that Plaintiff "cares for her minor children and assists with household chores."  Tr. 25.

A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict his or her other testimony, or (2) "the claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair*, 885 F.2d at 603).  "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination."  *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005)).  A claimant need not be "utterly incapacitated" to be eligible for benefits.  *Fair*, 885 F.2d at 603.

The ALJ erred in using Plaintiff's ability to care for her children and do household chores to discredit her.  The ALJ failed to note how Plaintiff's testimony was inconsistent with performing these activities and made no findings concerning how these activities involved tasks transferrable to a work setting.

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 11

Plaintiff's testimony does not rule out the possibility that she can do some activities.  Moreover, Plaintiff testified that her mother helps her take care of her children, Tr. 44, and her son needs to help her with grocery shopping, Tr. 51. Without more detailed findings, the fact that Plaintiff can care for her children and do certain household chores is not a specific, clear, and convincing reason to discredit her.

### 6.  Minimal work history

The ALJ noted Plaintiff's "credibility is undermined by her poor work history, which has been minimal and sporadic."  Tr. 25 (citing Tr. 167-75).

An ALJ's finding that a claimant had limited work history and "ha[d] shown little propensity to work in her lifetime" is a specific, clear, and convincing reason for discounting the claimant's testimony.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Plaintiff argues that she has worked every year since 1999 (except 2002 and 2003), and, contrary to the ALJ's finding, she has had "a fairly stable work history."  ECF No. 14 at 11 (citing Tr. 170).  Plaintiff's interpretation of her work history is not unreasonable.  But in this instance, where the Court does not have the expertise to determine what constitutes a minimal work history, the Court must defer to the judgment of the ALJ.  *Tackett*, 180 F.3d at 1097.  As found by the ALJ, Plaintiff has had many different jobs over the course of her life, but her earnings from most jobs have been mostly minimal, which indicates that her work history is somewhat "minimal and sporadic."  Tr. 25.  Thus, this was a specific, clear, and convincing reason to discredit Plaintiff.

### 7.  Inconsistent reporting of marijuana use

The ALJ noting that "[a]lthough [Plaintiff] testified she has not used marijuana for a couple of years, treatment records from March 2012 reflect she had abstained for 5 to 6 weeks at that time."  Tr. 25 (citing Tr. 368).

An ALJ may consider evidence of a claimant's substance use in assessing

credibility. *Thomas*, 278 F.3d at 959 (ALJ's finding that claimant was not a reliable historian regarding drug and alcohol usage supports negative credibility determination); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (conflicting or inconsistent testimony concerning alcohol or drug use can contribute to an adverse credibility finding).

Substantial evidence does not support the ALJ's finding that Plaintiff inconsistently reported her marijuana use.  Treatment records indicate that Plaintiff tested positive for marijuana in December 2011, Tr. 375, and last used marijuana in approximately January 2012. *See* Tr. 368, 370.  At the April 30, 2013 hearing, Plaintiff testified that she last used marijuana a "couple" years prior to the hearing, or around 2011, to help alleviate her pain. Tr. 49.  The Court agrees with Plaintiff that her inability to "pinpoint the exact date of her cannabinoid use" does not create an inconsistency that can be used to discredit Plaintiff.  ECF No. 14 at 12. If, as the record suggests, Plaintiff last used marijuana in January 2012, then her April 2013 testimony that she last used marijuana a couple years prior to the hearing is accurate.  The ALJ erred in finding that Plaintiff inconsistently reported her marijuana use and by using this inconsistency to discredit her.

### 8.  Conclusion

The ALJ provided some valid reasons to discredit Plaintiff including the fact that Plaintiff's pain improved with treatment and her minimal work history.  But the ALJ's adverse credibility determination also contains a number of errors. Specifically, the ALJ erred in discrediting Plaintiff on account of her unsuccessful work attempts, her daily activities, and inconsistent reporting of her marijuana use. The ALJ also partially erred in finding Plaintiff's neck, back, and hand pain unsupported by objective evidence.  Furthermore, in light of Plaintiff's pregnancy, it is unclear whether her lack of treatment after March 2012 was a valid reason to discredit her.

Given the number of errors made by the ALJ, and unresolved issues

regarding whether Plaintiff's credibility is diminished based on the objective medical evidence and her lack of treatment, the Court finds the ALJ's determination is not legally valid. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1160, 1162 (9th Cir. 2008) (the "relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error . . . it is whether the ALJ's decision remains legally valid, despite such error"). On remand, the ALJ shall re-assess Plaintiff's credibility consistent with this opinion, supplement the record if necessary, and take into consideration all other evidence pertaining to Plaintiff's claimed disability.

**B.    Evaluation of Medical Evidence**

Plaintiff argues the ALJ erroneously rejected the opinions of treating physician Troy Witherrite, M.D.  ECF No. 14 at 15-28.

"In making a determination of disability, the ALJ must develop the record and interpret the medical evidence." *Howard ex. rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830. The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn*, 495 F.3d at 631. The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first physician. *Murray v.*

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 14

*Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

Dr. Witherrite was Plaintiff's treating physician from at least February 2011 to November 2011. Tr. 336, 359. In August 2012, in response to a questionnaire provided by Plaintiff's counsel, Dr. Witherrite opined that Plaintiff did not need to lie down during the day, but if Plaintiff attempted to work full time, she would likely miss four or more days of work per month. Tr. 380-81.

The ALJ gave no weight to Dr. Witherrite's opinion that Plaintiff would miss four or more days of work a month. Tr. 25. The ALJ found this limitation was "not supported by the evidence of record, including [Dr. Witherrite's] own treatment records, which reflect some thoracic tenderness but normal range of motion, normal strength, and normal sensation. Tr. 25-26 (citing Tr. 336). The ALJ also noted Plaintiff's lack of treatment since March 2012 and reports in which she reported reduced levels of pain. Tr. 26 (citing Tr. 369, 372, 373).

The ALJ failed to provide specific and legitimate reasons for giving little weight to Dr. Witherrite's opinions. The ALJ properly cited to inconsistencies in Dr. Witherrite's treatment notes and his opinions rendered in response to Plaintiff's counsel's questionnaire. Tr. 25-26 (citing Tr. 336); *see Thomas*, 278 F.3d at 957 (ALJ may reject a medical opinion that is "inadequately supported by clinical findings"). But the Court finds the ALJ's other reasons for discounting Dr. Witherrite's opinions invalid. Contrary to the ALJ's finding, the Court agrees with Plaintiff that the objective evidence is mostly consistent with Plaintiff's symptom reporting. Furthermore, the fact that Plaintiff reported her pain was improving in January, February, and March 2012 does not necessarily contradict Dr. Witherrite's August 2012 opinion that Plaintiff's impairments are often debilitating.[1] Between March and August 2012, Plaintiff became pregnant and

---

[1]Defendant appears to be mistaken when Defendant argues, "In January 2012, *the same month* Dr. Witherrite offered his opinion, a clinician at the pain

stopped taking pain medication, which excused her from taking pain medication. Thus, Plaintiff's reports of improvement, made several months prior to Dr. Witherrite's opinion and before Plaintiff's intervening pregnancy, is not a specific and legitimate reason to reject Dr. Witherrite's opinion. Furthermore, as discussed *supra*, it is unclear whether Plaintiff's lack of treatment since March 2012 is a valid basis to discredit her symptom reporting. Without further development of the record, this is not a reason to reject Dr. Witherrite's opinions. Given these invalid reasons, and the errors contained in the ALJ's adverse credibility determination, the Court finds remand necessary for the ALJ to reassess Dr. Witherrite's opinions.

On a final note, as argued by Defendant, there are several reasons why Dr. Witherrite's August 2012 opinions might be accorded little weight. ECF No. 19 at 12-16. For instance, Dr. Witherrite provides no basis for his conclusion that Plaintiff would need to miss four or more days of work per month. *See Batson*, 359 F.3d at 1195 (ALJ may reject opinions that are "brief" or "conclusory"). Furthermore, the record suggests that Plaintiff last saw Dr. Witherrite in November 2011. Tr. 358-59. Although Dr. Witherrite presumably reviewed Plaintiff's reports generated by the pain clinic, the fact that he did not treat Plaintiff for almost a year prior to opining that Plaintiff would need to miss work four or more days a month makes the basis of his opinion questionable. On remand, the ALJ shall reassess Dr. Witherrite's opinions consistent with this opinion.

## REMEDY

The decision whether to remand for further proceedings or reverse and

---

clinic noted Plaintiff's report that she was not using her prescribed medication because she 'literally had no pain' following a recent steroid injection." ECF No. 19 at 15 (citing Tr. 372, 26) (emphasis added). Dr. Witherrite actually rendered his opinions in August 15, 2012, several months after the pain clinic notes. Tr. 380-81.

award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990). *See also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. The ALJ shall reevaluate Plaintiff's credibility and the opinions of Dr. Witherrite consistent with this opinion. At the new administrative hearing, the ALJ, if warranted, shall elicit the testimony of a medical expert to assist the ALJ in interpreting the medical record and determining Plaintiff's RFC. The ALJ shall present the RFC assessment to a VE to determine if Plaintiff is capable of performing any other work existing in sufficient numbers in the national economy. The ALJ may direct Plaintiff to undergo a consultative physical examination.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is not supported by substantial evidence and is based, in part, on legal error. Accordingly, **IT IS ORDERED:**

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 17

1.      Defendant's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

2.      Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3.      Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED September 28, 2015.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE